UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:  Case No. 19-56856
 Chapter 11
DJL BUILDERS, INC., et al.,[1]  Judge Thomas J. Tucker

    Debtors.  (Jointly Administered)
_____/

**ORDER REQUIRING DEBTORS TO AMEND DISCLOSURE STATEMENT**

On April 1, 2020, the Debtors in these jointly administered cases filed a joint plan and disclosure statement, in a document entitled "Combined Plan and Disclosure Statement of DJL Builders, Inc., and David J. Latawiec" (Docket # 85). The Court cannot yet grant preliminary approval of the disclosure statement contained within this document ("Disclosure Statement"). The Court notes the following problems, which the Debtors must correct.

1. If it is consistent with the treatment the Debtors intend for the Debtors' attorney fees, the Debtors must include the following information in paragraph 2.1.1 of the Plan on page 38, which treats Group I administrative claims:

- The Debtors estimate the administrative claim of the Debtors' attorney to be $30,000. The Debtors' counsel was holding Four Thousand Eleven and 00/100 Dollars ($4,011.00) in the firm's client trust fund account on the Petition Date. That $4,011.00, together with the Class V Capital Infusion will be used to pay the Debtors' attorney fees on the Effective Date. To the extent that such sources of funds are not sufficient to fully satisfy the Professional Fees, the Debtors shall pay the remaining balance as soon as funds become available, but in any event, no later than six (6) months after the Confirmation Date.[2]

---

[1] The Debtors in these jointly administered cases are DJL Builders, Inc. (Case No. 19-56856) and David J. Latawiec (Case No. 19-56857).

[2] These statements appear to be necessary to make the treatment of the Debtors' attorney fees in the Plan consistent with how the Debtors describe the treatment of such fees in the Disclosure Statement. If this treatment of the attorney fees is not what the Debtors intend, the Debtors must amend the Plan and Disclosure Statement to state the treatment of the attorney fees in a way that is consistent in the Plan and

In addition, if the Debtors have incurred professional fees for any accountant, the Plan must address such fees. It appears, however, that to date the Court has not approved the employment of any outside accountant for either of the Debtors.[3]

2. With regard to the Class II secured claim of the Internal Revenue Service ("IRS"), which is treated in paragraphs 3.2 through 3.2.13 of the Plan on pages 41 through 43, the Debtors must state the amount of the claim without regard to the value of the collateral; the property securing the claim (if real estate, the full address, including city and state); the fair market value of the property securing the claim; whether any portion of the claim is unsecured; and if so, whether the secured creditor will have an unsecured deficiency claim, to be included and treated

---

the Disclosure Statement.

As currently written, it appears that the treatment of unpaid Group I attorney fees for the Debtors' counsel in paragraph 2.1.1 of the Plan on page 38 is inconsistent with the treatment of these claims under the heading "Group I" in the Disclosure Statement on page 4. The Disclosure Statement on page 4 states, in relevant part: "All other administrative claims [which includes attorney fees for the Debtors' counsel] will be paid **in full on the Effective Date or as soon thereafter as is practicable.**" (Emphasis added). However, paragraph 2.1.1 of the Plan on page 38 states:

> All Professional Fees that are, or become, the subject of pending fee applications before the Bankruptcy Court or that have already been allowed by the Bankruptcy Court, but which remain unpaid, shall be paid in full, by the Disbursing Agent, in cash, without interest, on or as soon as funds are available after the date the order approving such fees is entered. **The Professional Fees due to the Debtors' counsel shall be paid from the funds deposited by the Debtors into the Firm's client trust account and the Class V Capital Infusion. In the event such sources of funds are not sufficient to fully satisfy the Professional Fees, Debtors shall pay the remaining balance no later than six (6) months after the Confirmation Date.**

(Emphasis added).

[3] The Debtors estimated on the liquidation analysis attached as Exhibits E-1 and E-2 that there would be accountant fees in the amount of $2,000.00, in the event of a hypothetical Chapter 7 liquidation.

in Group II or with the class of general unsecured claims; and if so, the amount of such unsecured claim. Some of this information appears to be in the liquidation analysis attached as Exhibits E-1 and E-2 to the Disclosure Statement. But all of the foregoing information must be clearly stated in the Plan, with respect to the secured claim of the IRS. The Debtors also must state in the Plan that the IRS "shall retain its liens, to the same extent and in the same priority as on the Petition Date, until its secured claim has been paid in full. The secured claims of the Internal Revenue Service shall receive interest at the statutory interest rate as of the Confirmation Date."[4]

    3. In paragraph 3.2 of the Plan on page 42, the Debtors state: "The unpaid Trust Fund Taxes will be paid through this Plan directly by DJL **as either priority or secured tax claims**." (Emphasis added). This is too vague. The Debtors must state whether they propose to treat unpaid Trust Fund Taxes as a priority claim, or whether they proposes to treat them as a secured claim, and then state the treatment under the appropriate group or class. Class II treats only the **secured** claim of the IRS. The Debtors must delete paragraph 3.2.3 of the Plan on page 41 and 42, because it states a treatment for Group II priority tax claims, and the subparts of paragraph 3.2 must concern only the treatment of the secured IRS claim.

    4. The Debtors must amend the description of their proposed treatment of groups and classes in the Disclosure Statement, so that it reflects, and is consistent with, any changes made to the Plan based on this Order.

    5. The Debtors must correct the following typographical errors:

---

[4] Although this information is provided in the Disclosure Statement on page 8, it also must be included in the Plan.

- In paragraph II.A.1 on page 11 of the Disclosure Statement, the Debtors must change "form" to "from."

- The Debtors must change "sixth (60)" to "sixty (60)" in every place in the Plan and Disclosure that it is found, including on pages 5, 8, 39, and 42.[5]

6. In paragraph II.A.1 of the Disclosure Statement on page 12, the Debtors must state whether David J. Latawiec receives any fringe benefits. If he does, the Debtors must state what those fringe benefits are and the value of those benefits. The Debtors also must provide that information in paragraph V.B of the Disclosure Statement on page 25.

7. In paragraph IV.C of the Disclosure Statement on page 20, the Debtors must state whether they have pursued or intend to pursue any claim against the former office manager who allegedly embezzled $40,000 from DJL Builders, Inc. (Facts giving rise to such a claim are stated on page 15 of the Disclosure Statement.) If the Debtors previously pursued recovery on that claim, what happened? If they have not previously pursued that claim and do not intend to do so, why not? If Debtors intend to pursue that claim, they must say so and must reserve that claim, so that it is not extinguished by confirmation of the Plan, under *res judicata* principles.

8. In paragraph IV.D.1 of the Disclosure Statement on page 20, the Debtors must state the total amount of priority tax claims.

9. The Debtors must amend paragraph VI.E of the Disclosure Statement on pages 28 through 29 so it states in its entirety:

> E. Effect of confirmation
>
> If the plan is confirmed by the Court:

---

[5] The Court is requiring the Debtors to delete the paragraph on page 42 in which "sixth (60) appears.

1. Its terms are binding on the debtor, all creditors, shareholders and other parties in interest, regardless of whether they have accepted the plan.

2. Except as provided in the plan and in 11 U.S.C. § 1141(d):

    (a) In the case of a corporation that is reorganizing and continuing business, as is the case with DJL Builders, Inc.:

        (1) All claims and interests will be discharged.

        (2) Creditors and shareholders will be prohibited from asserting their claims against or interests in the debtor or its assets.

    (b) In the case of an individual, as is the case with David J. Latawiec:

        (1) Claims will be discharged, except as provided in 11 U.S.C. §§ 523 and 1141(d). Unless the Court orders otherwise, the discharge will be entered only after completion of plan payments as provided in § 1141(d)(5)(a). It is the usual practice of the Court to close Chapter 11 cases after confirmation, then the individual debtor files a motion to reopen the case for entry of discharge upon completion of plan payments.

        (2) Creditors will be prohibited from asserting their claims except as to those debts which are not discharged or

dischargeable under 11
U.S.C. §§ 523 and 1141(d).

10. Paragraph 1.26 of the Plan on page 35 defines the word "Interest" in this way: "'Interest' means the interests of Debtors as defined in the Code. Interest shall refer to the Debtors' rights to Non-Exempt Assets." This definition appears to be both unnecessary and potentially confusing. The defined word "Interest" is not used anywhere in the Plan or the Disclosure Statement in a way that is necessary or helpful. "Interest" is not a defined term under the Bankruptcy Code. And DJL Builders, Inc. has no exemptions, so all of its property is non-exempt. Therefore, this definition appears to have no real meaning or purpose. It appears that the only possible meaning of "Interest" which makes sense in terms of the contents of the Plan, is the equity interest of David J. Latawiec in the Debtor, which appears to be treated in Class V of the Plan on pages 45-46, and there the Debtors do not use the word "Interest." The Debtors must delete or revise the definition of "Interest" in light of these observations.

11. Paragraph 1.31 of the Plan on page 36 states: "'Non-Exempt Assets' shall refer to any property of the Debtors, which is not exempt pursuant to the Code. Any property which is subject to an allowed lien or encumbrance shall **not** be considered a Non-Exempt Asset except to the extent that Debtors have any equity in such property." (Emphasis added.) The Debtors must delete the second sentence of this definition.

12. Paragraphs 2.2 and 2.2.2 of the Plan on pages 38-39 appear to be inconsistent regarding when the monthly payments on the Group II priority tax claims of the IRS, the State of Michigan, Department of Treasury and the State of Michigan, Unemployment Insurance Agency are to begin. Paragraph 2.2 says such payments will begin on January 28, 2021. But Paragraph

6

2.2.2 seems to imply that the payments begin sooner than that, soon after the Effective Date (which is defined to mean "the sixtieth (60th) Business Day after the Confirmation Order becomes a Final Order") under the definition of "Effective Date" in paragraph 1.23 of the Plan on page 34. Paragraph 2.2.2 states, in relevant part, that

> monthly payments on the Group II priority tax claims during the first twelve months after the Effective Date shall be fifty (50%) of the standard monthly payment that otherwise would be required. Beginning in the thirteenth month after the Effective Date, the payments will increase such that the remaining balance due will be paid in full in equal monthly payments within sixth (60) months of the Petition Date.

The time line in paragraph 2.2.2 is inconsistent with Plan payments beginning on January 28, 2021. The Debtors must correct this.

13. The Debtors also must state or estimate how much the monthly payments will be to each creditor in Group II, both during the "50%" period and thereafter.

14. In paragraph 2.2.4 of the Plan on page 39, the Debtors must state that the amount of the "offset of Latawiec's 2018 tax refund" is $7,047.00. Although this amount is stated in the Disclosure Statement on page 22, it also must be stated in the Plan.

15. In the described treatment of Class II of the Plan starting on page 41, the Debtors must state or estimate the amount of the monthly payments to be made to the IRS for its secured claim under Class II.

16. In the described treatment of Class III of the Plan starting on page 43, it appears that the "EST. PAYMENT" column of the table is meant to show the estimated amount of the monthly payment to be made to each listed creditor. The label in this table should make that clear, or the text of paragraph 3.3 needs to make this clear. And the monthly payment amounts in

7

this table (times 60) all add up to more than the listed "CLAIM AMOUNT" for each creditor, which means the monthly amounts appear to be excessive (since paragraph 3.3.2 says that these claims will not receive any interest). The Debtors must revise the description of the treatment of this class to correct these problems.

17. Paragraph 3.4 of the Plan on pages 44-45 states that Class IV includes "the claims of factoring companies," among others. But the summary of the Plan in the Disclosure Statement does not say that (*see* Disclosure Statement at 10 (regarding Class IV)). The Debtors must correct this apparent inconsistency.

18. Paragraph 3.5.1 of the Plan on page 45 indicates what happens to David J. Latawiec's equity interest (shares of stock in the Debtor DJL Builders, Inc.) — he retains it. But in Class V, the Plan also needs to state explicitly that David J. Latawiec, in his capacity as an individual bankruptcy Debtor under this Plan, retains all his property, other than his required transfer of the $5,000.00 "Class V Capital Infusion" to DJL Builders, Inc.

19. The statement of when David J. Latawiec must pay the $5,000.00 "Class V Capital Infusion" to DJL Builders Inc. is different in paragraph 3.5.1 of the Plan ("[w]ithin ninety (90) days of the Effective Date") than it is in the Disclosure Statement on page 10 ("[o]n or before the Effective Date"). The Debtors must eliminate this inconsistency.

20. Paragraph 6.3 of the Plan on page 48 states: "In the event the Debtors' financial condition is significantly changed after confirmation, the Debtors reserve the right to seek Court approval to modify the payments due to creditors." This statement of the Debtors' rights to seek modification of the Plan after confirmation is too broad, and it conflicts with the Bankruptcy Code. The rights of the two debtors in these cases to modify a confirmed plan are limited, in

8

different ways, by the Bankruptcy Code. As to DJL Builders, Inc., 11 U.S.C. § 1127(b) applies (no post-confirmation modification permitted after "substantial consummation" of the plan). As to David J. Latawiec, 11 U.S.C. § 1127(e) applies (post-confirmation modification possible any time "before the completion of payments under the plan"). The Plan needs to be more specific about each Debtor's right to seek a post-confirmation modification of the Plan, and must differentiate between the two Debtors, in a way that is consistent with the foregoing Bankruptcy Code provisions.

21. Paragraph 8.1 of the Plan on page 48 states, in relevant part: "**Except title to the Non-Exempt Assets**, all property of the Debtors and Debtors-in-Possession shall vest in the respective Reorganized Debtor or Debtors upon the Effective Date of the Plan." (Emphasis added.) It is unclear what purpose is served by the phrase "Except title to the Non-Exempt Assets." In any event, the use of this exception phrase requires the Debtors to state what happens to "title to the Non-Exempt Assets" upon the Effective Date of the Plan. And this exception language makes paragraph 8.1 seem inconsistent with the broad vesting language in the last sentence at the end of paragraph 5.1 of the Plan on page 47 ("Upon confirmation, the assets of the Debtors and Debtors-in-Possession shall vest in the Reorganized Debtor."). The Debtors must correct these problems.

22. Paragraph 13.1 of the Plan on page 50 states: "Except as otherwise set forth in this Plan, all Avoidance Actions shall be, and hereby are, released, extinguished and waived." The purpose of the "Except" phase is unclear, because it does not appear that Avoidance Actions are anywhere stated to be preserved (*i.e.*, not released). As worded, paragraph 13.1 arguably means that the three preference claims described in the Disclosure Statement at page 20 (one of which

9

is the subject of a pending adversary proceeding) will be released, extinguished and waived. But that does not seem to be the Debtors' intentions, from the wording of the Disclosure Statement on page 20. If the Debtors intend *not* to release those preference claims, they need to say that clearly here, or somewhere else in the Plan.

23. On pages 14 and 15 of the Disclosure Statement, the Debtors discuss the factoring agreements DJL Builders, Inc. made. In Class IV of the Plan on pages 44-45, the factoring companies are described as having unsecured claims. The Debtors need to explain how it is that none of the factoring companies had any liens in the Debtor DJL Builders, Inc.'s accounts receivable, as of the Petition Date.

24. The Disclosure Statement on page 16, and the liquidation analysis attached as an exhibit, say that only the IRS had a lien in the accounts receivable of DJL Builders, Inc. as of the Petition Date. Yet the disclosure statement on page 18 says that as of the Petition Date, the accounts receivable were "subject to liens of the Internal Revenue Service and the claims under the MBCFA [(Michigan Building Contract Fund Act (M.C.L. § 570.151, *et seq*.))]." This implies that the MBCFA claimants had a lien or some ownership interest in at least some of the receivables. Yet the MBCFA Claims are listed under Class III as having unsecured claims (*see* the opening words of paragraph 3.3 of the Plan on page 43 and also paragraph IV.E of the Disclosure Statement on page 23 (including the MBCFA Claims totaling $141,825.47 among the non-priority unsecured claims). The Debtors must explain or eliminate this apparent inconsistency.

Accordingly,

IT IS ORDERED that no later than **April 23, 2020**, the Debtors must file an amended

10

19-56856-tjt    Doc 87    Filed 04/16/20    Entered 04/16/20 12:17:01    Page 10 of 11

combined plan and disclosure statement that is consistent with this Order.

IT IS FURTHER ORDERED that no later than **April 23, 2020**, the Debtors also must file a redlined version of the amended combined plan and disclosure statement, showing the changes Debtors have made to the "Combined Plan and Disclosure Statement of DJL Builders, Inc., and David J. Latawiec" filed April 1, 2020.

**Signed on April 16, 2020**



/s/ Thomas J. Tucker
Thomas J. Tucker
United States Bankruptcy Judge